Filed 8/8/14  P. v. Johnson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>ANTHONY JOHNSON,<br><br>     Defendant and Appellant. | F066690<br><br>(Super. Ct. No. 12CM7361)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kings County.  Steven D. Barnes, Judge.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Gomes, Acting P.J., Kane, J., and Franson, J.

A jury convicted appellant, Anthony Johnson, of battery by a state prison inmate upon a non-inmate (Pen. Code, § 4501.5) and found true an allegation that appellant had suffered a "strike."[1]  The court imposed a prison term of two years, representing one-third of the three-year midterm for the instant offense, doubled pursuant to the three strikes law (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), and ordered that that term run consecutively to two prison terms appellant was serving at the time of the instant offense.

Appellant's appointed appellate counsel has filed an opening brief which summarizes the pertinent facts, with citations to the record, raises no issues, and asks that this court independently review the record.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Appellant has not responded to this court's invitation to submit additional briefing.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Instant Offense*

Consuelo Martin testified to the following:  On December 7, 2011 (December 7), she was employed as a correctional officer at Corcoran State Prison (Corcoran SP).  At approximately 5:00 p.m. on that date, she and Correctional Officer Eduardo Limon were in the process of serving the evening meal to inmates when they arrived at cell number 48 (Cell No. 48).

The officers could not see inside the cell because the inmate in the cell, appellant, "had his light covered up."  Officer Limon directed appellant to uncover the light and move to the back of the cell.  Appellant complied, moving approximately half way to the back of the cell.  Once the light was uncovered, Martin was able to see appellant, alone, inside the cell.  There was a "food port" in the cell door, and Limon unlocked and opened

---

[1]We use the term "strike" as a synonym for "prior felony conviction" within the meaning of the "three strikes" law (§§ 667, subds. (b)-(i), 1170.12), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

it as Martin removed a food tray from the cart holding the trays.**2**  As she was "secur[ing the tray] with both hands," she "noticed out of [her] peripheral vision [appellant] rushing" toward the food port, "with his right hand in an under-hand throwing motion."  Martin was "unaware if [appellant] ran or not."  She observed "a real quick motion .…  It was really fast."

At that point, Martin was hit "on the right side of [her] jumpsuit … ear, cheek, face, … eye, … [and] a portion of [her] face shield" with an "unknown," clear "liquid substance."  Appellant then "put his right arm out of the food port," pointed a finger at Martin and yelled at her, "'That's for you bitch.  You want more thrown on you, bitch?  That's for you, bitch.'"  At that point, Martin, unsure if appellant was going to continue the attack, sprayed appellant with pepper spray through the open food port.  Appellant then retracted his arm and Martin and Limon "secured the food port" and "exited the section."

Officer Limon gave a virtually identical account of the events Martin described.  He added that appellant "ran" from the back of the cell to the food port.  Appellant was not using crutches.  Asked if he observed crutches in the cell, Limon answered, "Not at that time in [appellant's] cell, no."

Javier Cerda testified to the following:  He is, and was on December 7, employed as a correctional officer at Corcoran SP.  At approximately 5:00 p.m. on that date, from his vantage point in the "control booth," approximately 30 to 40 feet from Cell No. 48, he saw the following:  Limon and Martin were in the process of delivering food trays and were in front of Cell No. 48 when they "jump[ed] back from the food port."  Appellant's arm was outside the food port and he was yelling, "'I've got more.  That's what you get,

---

**2**A photograph of the door to Cell No. 48, admitted into evidence, shows two rectangular windows next to each other in the cell door, each affording a view of the cell, and a food port located a few inches directly underneath one of the windows.

3.

bitch, and I've got more for you, too.'" Martin deployed her pepper spray in the direction of the cell and appellant "ran to the back of the cell."

Che Love testified to the following: On December 7 he was working as a correctional officer at Corcoran SP, assigned to the Investigative Services Unit, when, at approximately 5:00 p.m., he "respond[ed] to an incident" at Cell No. 48. Appellant was inside the cell. Love took a photograph of the inside of the cell through the cell door window. The photograph showed, in the cell, liquid on the floor and a milk carton. The liquid was not pepper spray. The milk carton was not collected as evidence.

Dr. Wayne Ulit testified to the following: He is a medical doctor, employed at Corcoran SP. On November 30, 2011, appellant had arthroscopic surgery on his right knee. Appellant was given crutches and his post-surgery "order" was to "use" them. A week after surgery, a person is "not expected to run." A person "could" run, "if you want to have pain in your legs …."

Appellant testified to the following: He had undergone knee surgery approximately one week prior to December 7. On that date, he had crutches, they were in his cell, and he needed them to walk. He could not run.

On December 7, he was given food but he could not eat because of the pain medication he was taking. When Limon and Martin came to retrieve the tray, he tried to hand it to Martin, the food still on it. He thought she had it in her grasp, but the tray fell, at which point Martin "started flipping out." She falsely accused appellant of purposely causing the tray to fall, "stuck her hand in the tray slot," and "sprayed" appellant.

Appellant did not stick his hand out of the food port and he did not throw anything.

### Prior Conviction

It was shown by documentary evidence that appellant has suffered a conviction of attempted murder in November 2005.

## DISCUSSION

Following independent review of the record, we have concluded that no reasonably arguable legal or factual issue exists.

## DISPOSITION

The judgment is affirmed.